ROBERT L. DAVIS *v.* STATE OF INDIANA.

[No. 676S191. Filed October 14, 1976.]

*Michael E. Hunt,* Monroe County Public Defender, of Bloomington, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant, Robert L. Davis, was charged by information in the Monroe Superior Court, with the offenses of kidnapping, Ind. Code § 35-1-55-1 (Burns 1975), and rape, Ind. Code § 35-13-4-3 (Burns 1975). Appellant entered a plea of guilty to the rape charge and was convicted of kidnapping after trial by jury. He was sentenced to a term of seventeen years imprisonment for the rape conviction and life imprisonment for kidnapping. Appellant filed a motion to correct errors which was overruled and, he appeals, raising the following two questions:

(1) Whether the trial court erred in refusing to give a tendered instruction on the defense of mistake of fact;

(2) Whether the trial court erred in giving two instructions on the effect of intoxication as a defense.

I.

The appellant tendered his final instruction (7a) which stated:

"Ignorance or mistake of fact is a defense when it negatives the existence of a mental state essential to the crime charged. If the jury believes, from the evidence, that the conduct of the prosecutrix was such towards the defendant, at the time of the alleged kidnapping, as to create in the mind of the defendant the honest and resonable belief that she had consented, or was willing to go with the defendant, then you must acquit the defendant."

The trial court refused this instruction. The State argues that this Court is precluded from considering the merits of

appellant's contentions because appellant failed to include in the argument section of his brief a verbatim account of his objections to the refusal of his instruction and to the giving of the court's instructions. It is true that appellant has not complied with Ind. R. Ap. P. 8.3 (A) (7) in this respect. This rule was adopted by the Court "to secure a convenient and uniform mode for presentation of issues to an appellate court," not to allow one party to avoid the substance of the other's arguments. *Hubbard* v. *State*, (1974) 262 Ind. 176, 313 N.E.2d 346, 348. We invoke Appellate Rule 8.3 to hold an appellant's specification of error waived only when we find his non-compliance with the rule sufficiently substantial to impede our consideration of the issue raised. In this case we find that the issue of the propriety of this instruction is presented in a manner sufficiently clear to allow us to reach the substance of appellant's contention. We hope that this does not encourage any member of the Bar of this State to ignore Rule 8.3 in the future, for this Court has often applied that rule to hold an issue waived where we have found the non-compliance to be substantial or in bad faith. *Frasier* v. *State*, (1974) 262 Ind. 59, 312 N.E.2d 77; *Martin* v. *State*, (1974) 261 Ind. 492, 306 N.E.2d 93; *Bonds* v. *State*, (1972) 258 Ind. 241, 280 N.E.2d 313.

In considering whether any error results from refusal of a tendered instruction we must determine: (1) whether the tendered instruction correctly states the law, *Gayer* v. *State*, (1965) 247 Ind. 113, 210 N.E.2d 852; (2) whether there is evidence in the record to support the giving of the instruction, *Wathen* v. *State*, (1965) 246 Ind. 245, 204 N.E.2d 526; (3) whether the substance of the tendered instruction is covered by other instructions which are given, *Hash* v. *State*, (1972) 258 Ind. 692, 284 N.E.2d 770; *New* v. *State*, (1970) 254 Ind. 307, 259 N.E.2d 696; *Cockrum* v. *State*, (1968) 250 Ind. 366, 234 N.E.2d 479.

The tendered instruction relates to the defense of "mistake of fact." Indiana has long recognized that an honest and reasonable mistake concerning a fact or facts, excuses crimi-

nal conduct which would not be criminal if facts were as the actor reasonably believed. *Noble* v. *State,* (1967) 248 Ind. 101, 223 N.E.2d 755; *Squire* v. *State,* (1874) 46 Ind. 459.[1]

To sustain a conviction of kidnapping it is necessary that it be shown that the accused intended to do the prohibited thing, to forcibly or fraudulently carry off a person from any place within the state. *White* v. *State,* (1963) 244 Ind. 199, 191 N.E.2d 486; *Boatman* v. *State,* (1956) 235 Ind. 623, 137 N.E.2d 28; *Sweet* v. *State,* (1941) 218 Ind. 182, 31 N.E.2d 993. An honest, reasonable belief that his victim freely consented to accompany him would negate any intent to "forcibly carry off" the victim. It need not negate an intent to "fraudulently carry off," because the statute also prohibits the procurement of a person's voluntary accompaniment by fraudulent means. See *Shipman* v. *State,* (1962) 243 Ind. 245, 183 N.E.2d 823.

The information in this case charged appellant with "unlawfully, feloniously, and forcibly carry[ing] away, decoy[ing] and kidnap[ping]" his victim. While the word "decoy" seems to suggest that the State had charged appellant with kidnapping by alternative means, force and fraud, there was no evidence at the trial that appellant "decoyed" the victim. We believe that the information charges appellant with committing the crime of kidnapping by forcible asportation. Therefore if appellant was under the honest and reasonable mistaken impression that the victim accompanied him voluntarily, his mistake would negate the necessary mental state of intent to carry off forcibly, and would constitute a defense. We must now determine whether there is sufficient evidence to warrant the giving of the instruction.

Appellant was charged with the kidnapping of a woman from a laundromat in Bloomington in the early morning

---

1. Under the revised penal code which takes effect July 1, 1977, this rule is codified as follows:

"Mistake of Fact. It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about the matter of fact if the mistake negates the culpability required for commission of the offense." (Acts 1976, P.L. 148 at p. 725, adding Ind. Code § 35-41-1-7).

hours of September 17, 1975. The victim was a nurse who worked the late shift at Bloomington Hospital and did her laundry after work because her irregular hours made her unable to sleep. The victim was alone in the laundromat when appellant entered. She testified that he seized her arm, twisted it behind her back, and thus forced her out of the laundromat, saying "Move, or I'll blow your head off." The victim had her purse in her hands as she left but left her laundry. She was pushed into appellant's car with her arm still behind her back.

Appellant testified that he entered the laundromat intending to steal the victim's purse, and that he had been drinking. Appellant said that after he asked the victim for a match, he "took hold of her hand and . . . asked her to go with [him]." As they left, she asked where appellant was taking her, to which he replied, "I don't know." The victim said, "Don't hurt me," and appellant said he would not.

Appellant denied forcing the victim's arm behind her back, but admits not releasing his grip on her arm until she entered his car. After entering his car, the victim said to appellant, "I'll do anything you want; bring me back." Appellant testified that he did not force the victim out of the laundromat, in the following colloquy:

## "DIRECT EXAMINATION

Q. O.K. Are you saying, are you telling me that you didn't force her out of that bus station?

A. I didn't force her out of the laundromat, no.

Q. Was she scared, do you know? Frightened?

A. She didn't act scared, but ninety per cent of people would be frightened.

Q. At least, in your confession, you said she wasn't scared at first; is that right?

A. At first, no, she wasn't scared.

Q. And she said she'd do anything as long as you took her back to the laundromat?

A. Yes.

Q. Why do you suppose she would walk out of that bus station with you, a perfect stranger, at 2:30 or 3:00 in the morning?

A. I don't know."

In order for a mistake of fact to excuse appellant from criminal liability, that mistake must be honest and reasonable. Honesty is a subjective test dealing with what appellant actually believed. Reasonableness is an objective test inquiring what a reasonable man situated in similar circumstances would do. To require the giving of appellant's instruction, we must find some evidence of both.

Appellant's assertion that he did not "force" the victim out of the laundromat provides some evidence that he honestly so believed. It is, however, no evidence of the reasonableness of that belief. Appellant was properly allowed to testify as to his own state of mind, which was in issue, but his statement also constituted an opinion as to the victim's state of mind, and as such was not competent evidenec. *McKee* v. *Hasler*, (1951) 229 Ind. 437, 98 N.E.2d 657. Apart from this statement we find nothing in the record to suggest that a reasonable man in appellant's position would have interpreted the victim's actions as indicative of her free consent to accompany appellant. By appellant's own version of the encounter the facts are such that no reasonable person could have believed as appellant alleges he did. In spite of our preference to leave determinations of reasonableness to the jury, which embodies the values of the community, we find no evidence here from which the jury could have determined that appellant's belief was reasonable. It is not the law that the victim of a kidnapping must resist with force when the victim is reasonably in fear of her kidnapper. *Johnson* v. *State*, (1974) 262 Ind. 516, 319 N.E.2d 126. We find no error in the trial court's refusal to give appellant's instruction (7a).

II.

Appellant also assigns as error the giving of Court's Final Instructions (13) and (17), which read as follows:

Instruction 13.

"In order to convict the defendant of the crime of kidnap, it is necessary to satisfy the jury beyond a reasonable doubt that the defendant entertained the specific intent to kidnap his accuser. Mere drunkenness does not excuse the offense; but intoxication may be *so extreme* that a person is incapable of forming or entertaining a specific intent. If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such specific intent.

.If from all the evidence you have a reasonable doubt whether the defendant was capable of forming such specific intent, you must give the defendant the benefit of that doubt and find that he did not have such specific intent." (Emphasis added.)

Instruction 17.

"The Court further instructs you that the condition of mind which usually and immediately follows the excessive use of alcoholic liquors is not, in and of itself, the unsoundness of mind meant by our law. Mere voluntary drunkenness or intoxication does not excuse crime and a defendant cannot escape punishment for a crime on the ground that he did an alleged unlawful act while drunk; and such drunkenness and/or intoxication does not lessen or abate the severity of punishment prescribed by law. In other words, mere voluntary drunkenness or intoxication is no excuse for crime, nor does it mitigate or palliate an offense actually committed."

· Appellant's objection to Instruction (13) is to the inclusion of the phrase "so extreme" in the sentence charging the jury that voluntary intoxication may preclude the formation of specific intent. Appellant urges that the words "so extreme" suggest that appellant must have been intoxicated in some high degree before his intoxication will prevent formation of specific intent. The wording used in the formulation of a voluntary intoxication instruction approved in *Snipes* v. *State*, (1974) 261 Ind. 581, 307 N.E.2d 470, is that a defendant must be "so intoxicated as to be incapable of entertaining the required specific intent." 307 N.E.2d at 471. We do not believe that the wording "so extreme" rendered the instruction unduly misleading to the

jury. The phrase "intoxication may be so extreme that a person is incapable of forming or entertaining a specific intent" (Instruction 13) does not necessarily imply a greater degree of intoxication than "so intoxicated as to be incapable of entertaining the required specific intent." (*Snipes* instruction) We do not approve the wording of the instruction given in this case, but find that it was not seriously misleading.

Appellant failed to object to Instruction (17) at trial and any error in the giving of that instruction is waived. Ind. R. Cr. P. 8(B). Moreover, we have recently held that the giving of an instruction such as No. (17), although disapproved in *Snipes, supra,* does not constitute reversible error, although the better practice is simply to give the *Snipes* instruction alone. *James* v. *State,* (1976) 265 Ind. 384, 354 N.E.2d 236.

We find no error, and the conviction of appellant, Robert L. Davis, is affirmed.

Arterburn, Hunter and Prentice, JJ., concur; Givan, C.J., concurs in result.

NOTE.—Reported at 355 N.E.2d 836.