Shaylene STEVENS, Appellant,

v.

STATE of Indiana, Appellee.

No. 50S00–8709–CR–844.

Supreme Court of Indiana.

Jan. 5, 1989.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Felony Murder, for which she received a sentence of forty (40) years.

The facts are: At the time of the commission of the crime in this case, appellant was fifteen years of age. She had informed her boyfriend, Dan Wallis, Jr., that she might be pregnant. They talked about getting married and leaving the area. At approximately 5:00 p.m. on July 18, 1986, Wallis received a telephone call from his father requesting that he return the father's truck. Instead of complying with the request, Wallis and appellant gathered a bag full of clean clothing from appellant's grandmother's home, then drove to her mother's home where appellant picked up her paycheck. They returned to the area of appellant's grandparents' home and parked the truck down a side road to hide it from Wallis's father. They then walked back to the grandparents' home. On the way, they placed the bag of clean clothing under a tree. They arrived at the grandparents' home at approximately 6:00 to 6:30 p.m. Appellant and Wallis sat outdoors on a blanket and talked some more about leaving.

The victim, Grace Hock, was appellant's uncle's mother-in-law and lived next door to appellant's grandparents. Appellant's grandfather had asked Wallis to check the victim's sink to make sure it was all right. At approximately 9:30 p.m., appellant went into her grandparents' house where she stayed for about one-half hour watching television with her grandmother. At about 10:00 p.m., appellant went back outside where she noticed that Wallis was in the victim's home.

Wallis came out onto the porch and called to appellant to join him in the victim's home. He then requested that appellant find the victim's car keys. As appellant entered the house, she saw the victim on the floor and heard her labored breathing. While appellant was searching for the car keys, she witnessed Wallis stomping on the victim. The keys were found, and Wallis carried a boxful of items from the house. Appellant closed and locked the door to the victim's home.

They then went to the garage and Wallis drove the victim's car from the garage. As appellant was closing the garage door, Wallis's father drove up and partially blocked the driveway to the victim's garage. Wallis's father and his girl friend observed appellant close the garage door and then go to the passenger side of the victim's automobile. She tried to open the

door, but it was locked. They observed Wallis lean over and unlock the door and saw appellant enter the car. The car then accelerated at high speed, ran through a hedge, crossed the lawn, and left the scene.

Appellant and Wallis travelled across the country to California. Along the way, they sold several items taken from the victim's home. In California, the highway patrol, acting upon a report issued by the LaPorte County, Indiana authorities, attempted to intercept Wallis and appellant in the victim's automobile. The resulting chase ended in a crash in which Wallis was killed and appellant injured. While in the hospital in Reno, Nevada, appellant gave three separate statements to the police, each of which differed and was also different from the account given by appellant at her trial.

Appellant claims her rights to due process and equal protection of the law were violated by the trial court's order which granted her request for the appointment of a psychiatrist but ordered that the report of the psychiatrist be made available to the State. The court also ruled that a second psychiatrist would be chosen by the State to be appointed by the court and that both reports would be made available to the defendant and to the State. However, the record indicates that appellant abandoned this request and that no psychiatrist was chosen by either the defense or the State.

It was appellant's initial theory that she had been acting under the domination of Wallis, that her actions were not of her own free will, and that psychiatric evaluation might disclose that she did not possess the *mens rea* needed to perpetrate the crime. In such a situation, it would be entirely proper for the trial court to appoint two psychiatrists to examine appellant. However, because this theory was apparently abandoned by appellant and no psychiatrists ever were appointed, there is no showing of any prejudice to appellant. In fact, had the psychiatrist been appointed under the theory that appellant had not been competent to form the intent to commit the act, the appointment should have been made pursuant to Ind.Code § 35–36–2–2, in which event the report of

the psychiatrist would have been available to both parties. *See Mahaffey v. State* (1984), Ind., 459 N.E.2d 380.

The fact that appellant did not pursue this theory of defense cannot now result in reversible error. A party cannot await the result of a trial and then claim error which was not raised at the proper time during the trial. *Parr v. State* (1987), Ind., 504 N.E.2d 1014; *Inman v. State* (1985), Ind., 482 N.E.2d 451. In order to obtain a reversal, appellant must affirmatively show that there was prejudicial error committed at the trial level. *Shaw v. State* (1986), Ind., 489 N.E.2d 952.

Even if we would presume for the sake of argument that the trial court erred in ordering that each side would choose a psychiatrist to be appointed, such error does not require reversal unless there is a showing that appellant has been prejudiced by the court's ruling. There is no such showing in this case. *Id.*

Appellant claims the verdict of the jury is not supported by sufficient evidence. It is appellant's position that there is no evidence that she had any knowledge of Wallis's intent prior to the time he attacked the victim, and she only aided Wallis's escape from the scene because she feared he would harm her and her grandparents if she did not cooperate. This was her version of the crime as related to the jury.

However, the facts as above related furnished circumstantial evidence from which the jury could logically conclude that appellant and Wallis had planned to leave the State, that they demonstrated they did not intend to leave in Wallis's father's truck in that they abandoned it on a side road some distance from the scene of the crime. They gathered clothing and money and then went to appellant's grandparents' home next door to the home of the victim. The jury could logically conclude that appellant and Wallis intended to leave the state in the victim's automobile.

This inference is further enhanced by the fact that as appellant was aiding Wallis in removing the victim's vehicle from the ga-

rage and Wallis's father appeared on the scene, appellant pounded on the car door to gain entry so as to escape with Wallis. It was logical for the jury to conclude that had appellant intended to have no part in the crime she could have remained outside the automobile and allowed Wallis to drive off without her. Appellant is essentially asking this Court to reweigh the evidence and to determine that the jury was in error in its conclusions. This we will not do. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

The circumstantial evidence in this case is sufficient to sustain the verdict. *Jones v. State* (1986), Ind., 500 N.E.2d 1166. The jury was entitled to draw reasonable inferences from the facts established to determine that appellant had in fact participated in the crime. *Correll v. State* (1985), Ind., 486 N.E.2d 497. The evidence in this case is sufficient to support the verdict of the jury.

Appellant claims the sentence of forty (40) years is manifestly unreasonable in light of her character and the nature of the offense. Under Ind.Code § 35-50-2-3, the sentence of forty (40) years is the presumptive sentence for murder. This sentence could have been enhanced by twenty (20) years for aggravating circumstances or it could have been reduced by ten (10) years for mitigating circumstances. However, after carefully reciting the facts of the case including appellant's age, which at the time of trial was sixteen years and the fact that Wallis was the principal perpetrator of the crime, the trial court nevertheless found that the age of the victim and the seriousness of the offense dictated that the presumptive sentence should be imposed. We find nothing in this record to dispute the finding of the trial court.

This Court will not review a sentence on appeal unless it is found to be manifestly unreasonable so that no reasonable person could find the sentence appropriate to the offender. Ind.R.App.R.Sen. 2; *Williams v. State* (1979), 271 Ind. 408, 393 N.E.2d 149. The sentence will be reversed only upon a showing of a manifest abuse of discretion.

*Scruggs v. State* (1986), Ind., 489 N.E.2d 935.

Appellant claims the trial court abused its discretion in failing to give proper consideration to the mitigating circumstances in this case. Although it is unnecessary for the trial court to recite the mitigating circumstances if they are not being relied upon, *Stoner v. State* (1982), Ind., 442 N.E. 2d 983, the trial court in the case at bar did in fact recite the mitigating circumstances but found them offset by aggravating circumstances. We find nothing in this record to justify a setting aside of the trial court's sentence.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DeBRULER, J., concurs in result without separate opinion.

DICKSON, J., dissents without separate opinion.